Good morning. May it please the court. My name is Michael Burke, and with my co-counsel Sarah Stone, I represent the petitioner-appellant Robert Poyson. There are three certified issues before the court today. Two of those issues concern the state court's consideration of evidence that Mr. Poyson presented in mitigation of the death sentences that the state sought. The third issue concerns Mr. Poyson's claim of ineffective assistance of counsel at the penalty phase of his trial. Because we believe that the first issue, the Eddings issue, is dispositive of this case, with the court's permission, I would like to focus on that issue today. In Shadd v. Ryan, this Court recognized that prior to the U.S. Supreme Court's decision to Nard v. Dredge, that the Arizona Supreme Court recognized a nexus test to exclude some forms of mitigating evidence that did not bear a causal connection to the defendant's crime. But this Court also made clear in Shadd that a habeas petitioner is only entitled to relief for an Eddings claim if he or she is able to show that there is a clear indication in the record that there has been an Eddings violation. In this case, in Mr. Poyson's case, we submit that the record is – it plainly that Eddings violations occurred with regard to three areas of mitigating evidence that Mr. Poyson presented. And I would like to address those three areas of mitigation to discuss the Eddings violations that we see occurred in this case. At Mr. Poyson's sentencing, his attorney submitted a sentencing memorandum that addressed statutory mitigating and non-statutory mitigating evidence factors. Three of those factors were found by the Court not to exist. That was the Court's specific finding, that Mr. Poyson had failed to show by preponderance of the evidence that the mitigating factors existed. The first concerned Mr. Poyson's history of physical, emotional, and sexual abuse as a child. The trial court found that Mr. Poyson had indeed shown that he had been subjected to all three forms of abuse, but found that his latter conduct was not a result of his childhood. And because of that, the State court found that he had not proven child abuse, childhood abuse, as a mitigating factor. The next area of mitigation that was presented by Mr. Poyson's trial counsel was his argument that Mr. Poyson's personality disorders were entitled to non-statutory mitigating weight. But the trial court found that although there were personality disorders, that he was unable to draw any connection between the disorders and the offenses. And so he found, again, that the mitigation had not been proven. And finally, there was the issue of Mr. Poyson's history of drug and alcohol abuse. There, the trial judge referred to vague allegations of Mr. Poyson's abuse. And some background here, drug and alcohol abuse is often presented in two different contexts in Arizona mitigation law. Under the statutory mitigating factor of G1, if the defendant's use of drugs and alcohol has a significant impairment on his ability to understand the wrongfulness of his act or to conform his conduct, that may well be a G1 statutory mitigating factor. However, Mr. Poyson's counsel argued both that Mr. Poyson's history of drug use, both on the day of the event and at all other times, were statutory and non-statutory mitigating factors. What the trial judge found in this case was that there were only vague allegations of drug and alcohol abuse and that Mr. Poyson's ability to engage in goal-oriented behavior was not impaired at the time of the crime. Whether it had impaired its ability at the time of the crime, of course, was not relevant to whether it was a non-statutory mitigating factor. The next step in Mr. Poyson's case was that the case went to the Arizona Supreme Court after he was sentenced to three death sentences to the Arizona Supreme Court for its direct review. With regard to two of the mitigating factors I've just discussed, it appears that the Arizona Supreme Court's decision was the final reason decision. The first one, yet I think, is not the final reason decision of the State court, and I'll explain why. With regard to childhood abuse, the Arizona Supreme Court – and let me start by saying that the Arizona Supreme Court affirmed the trial judge's ruling. It found no other mitigating circumstances except for one, which was his age, which it gave minimal weight. It did not say that the trial court had erred in not considering any of the other factors. It affirmed and agreed that they were not mitigating factors. It used different words, though. So whereas the trial court said it wasn't a mitigating factor, the Supreme Court said, I'm not going to give it – it has little weight or no weight or it's without mitigating value. So it didn't say it wasn't, it didn't constitute mitigation. How does that make a difference, if at all? I – Your Honor, I don't think that it makes any difference, because what happened was the court said we can give it no weight because it did – and this was the Supreme Court's language – it did not render him unable to control his conduct at the time of the crime. And so the line of cases that flow from Eddings and Lockett say that it's not enough that the evidence be totally excluded. It has to be – if the evidence is admitted, it also has to be given consideration, meaningful consideration. So can a sentencer consider mitigating evidence but then decide to give it no weight? Is that constitutional, if they decide that that mitigating factor has – or that mitigating evidence has little or no weight? I think there's a distinction there, little or no. I think if the court says I give it no weight, that may well be an Eddings violation. Is there a – because Eddings doesn't say that. So I'm just trying to understand if the State court could reasonably interpret the Supreme Court precedent at the time as precluding a sentencer from saying I've considered the mitigating evidence, but I don't give it any weight. Would it be unreasonable to interpret Supreme Court cases as allowing that? In all candor, I would have to say that it would not be unreasonable simply because the U.S. Supreme Court decisions in this line don't necessarily make it clear what is meant by giving reasoned consideration to the evidence. And you see no weight in several cases. And so it's not entirely clear. Not to evade an answer to your question, Your Honor, though, in this case, specifically with regard to the mitigating factor of child abuse, that issue came up again in State post-conviction. And in a written opinion by the State post-conviction judge, who was also the trial judge, he reaffirmed that there was a necessary – it was necessary to show a connection between abuse and criminal acts, or otherwise it would not be mitigating evidence. So even if there was some ambiguity with regard to that mitigating factor in this case, I believe it is overridden by the fact that the trial judge later restated his opinion that there was a causal connection requirement. With regard to the question of personality disorders, the Arizona Supreme Court said that there was no evidence that his disorders controlled his conduct or impaired his mental capacity. And it cited a case called Brewer, State v. Brewer. Brewer was actually cited by the State in its direct appeal answering brief as an example of a case that requires a causal nexus. And I think it is clear when you look at Brewer, and while Brewer addresses the personality disorder, that the Arizona Supreme Court, again, was applying a causal nexus with regard to the evidence of his personality disorders. But then the Arizona Supreme Court goes on to say, they quote, cite Medina, saying, therefore, the defendant's personality disorder had little or no mitigating value, and conclude, we therefore accord this factor no mitigating weight. So it seems to be the same sort of verbal formula, rather than saying, therefore, it's not a mitigating factor, which is what the trial court seemed to indicate, to saying it is a mitigating factor, but we give it no weight. And I'm just trying to understand how to understand that. And perhaps, Your Honor, the better way to look at it is not to look at the exact language with which they finish their analysis, but the language with which they begin it, which is, because there is no connection. We give it no weight. And I believe, if I remember correctly, in Eddings, the judge said, I can give this evidence of a dysfunctional childhood no weight. The important factor is the correlation, the causal connection, the nexus. And that is what the Arizona Supreme Court clearly did in Mr. Poisson's case, because there is no connection, we give it no weight. It was not because we find it not to be compelling. It was because of that connection, and that was a violation of Lockett and Eddings. But, you know, the Arizona Supreme Court here, sitting and reweighing the factors, is the sentencer. And so the sentencer says, I need to give a moral response to this mitigating evidence, and because there is no nexus, I don't think it has mitigating value. Could a sentencer constitutionally do that, if it were the jury or whatever? I don't believe so, Your Honor, no. They must give it some consideration. Well, they give consideration, but do they have to give it some weight? I mean, that's really the question. If they feel free to consider the evidence and to give a reasoned moral response to the evidence, they presumably could give it no weight. If they feel constrained by case law or statute from giving it weight, that would be a violation of Lockett and Eddings, and that's what occurred in this case. So the Supreme Court, though, is making the – I mean, they would be free, wouldn't they, to decide how they were going to give weight to this issue? Unlike the trial court, which might feel bound by the Supreme Court's rulings. I don't think there was any statute on point. So why isn't the Supreme Court free to make this determination? Why is it constrained? It would be free, Your Honor, to conduct an independent way in which it gave a reasoned moral response to the evidence. But they – it is evident from the language that the Court used that the five justices of the Supreme Court themselves felt constrained by prior case interpretations in Arizona from giving it any weight. That was the problem. It was not a result of their independent, free consideration of the evidence. They felt constrained by case law, which is where the violation occurred. Weight, no weight or little weight, I'm not sure that that's necessarily the key factor there. There was also the issue of Mr. Poisson's drug and alcohol abuse. And I would submit that the Arizona Supreme Court's decision on this factor is really somewhat confusing. They addressed it both as a statutory and non-statutory mitigating factor. And then they say that for the reasons that they gave with regard to finding it not to be a statutory mitigating factor, they again find it not to be a non-statutory mitigating factor, and they again refer to vague allegations. That gives rise to two arguments on our part. The first is an Eddings argument, that with regard to reviewing this evidence as a non-statutory mitigating factor, the court felt that they had to apply a causal nexus requirement to the crime. Under Arizona law, a causal nexus requirement is required for statutory mitigation involving drug and alcohol abuse. There's a case called State v. Sansing that says as much. So our first argument is that it's clear from the language that the court used, that they were applying a causal nexus requirement to the non-statutory mitigating factor of drug and alcohol abuse, and they thereby violated Lockett and Eddings. There's another problem, and this goes to our second argument with regard to that particular piece of evidence, which is that the State supreme court said that they agreed with the trial judge that there were only vague allegations of drug and alcohol use. The record, however, that was before the trial judge and the State supreme court contained ample evidence of Mr. Poison's history, long history, dating back to the age of, I believe, 12 or 13, of alcohol and drug abuse. It included records from his time spent in Las Vegas at a facility for drug and alcohol abuse. The evidence was not the least bit vague, and that gives rise to some question  of the evidence in this case, which they would be required to do under the Eighth Amendment. The case that we cite, and I think the one that's the most compelling, is Parker v. Duggar, in which it has to be evident that the court actually looked at the record in this case. And for the court to say that there was vague, only vague allegations of drug and alcohol abuse is simply not supported by the record here. So we believe that those three areas also locket adding violations. And the third, the drug ---- I want to make sure I'm looking at the we're looking at the same references. I'm looking, are you referring to where it says, The trial judge refused to court any weight to the defendant's substance abuse as a non-statutory mitigating circumstance. It characterized the defendant's claims that he had used drugs or alcohol in the past or was under the influence of drugs on the day of the murders as little more than vague allegations. As discussed above, we agree. It's in the conjunctive. You focus on the had used drugs or alcohol in the past. You say that the record is replete with evidence about that. Or was under the influence of drugs on the day of the murders. Was that also clear? That wasn't so clear, was it? That was, Your Honor, that was not as clear. I would concede that. But that second portion following the or would, in fact, go to the statutory, the statutory mitigating factor of whether or not it controlled his ability at the time of the crime, which was not what the court was evaluating at this point. And for them to refer back to their argument with regard to the statutory mitigating factor shows that they were confused and they were conducting a causal nexus argument. So that supports our Edding claim. Back to Edding theory for just a second. Do you think that a State can constitutionally consider causality at all in constructing a weighing in its weight of the factors as opposed to excluding those factors from consideration? As I understand the Supreme Court authority on that, that it would be constitutionally permissible to apply a causality. Consideration. I don't want to say requirement. To consider causality in giving weight to the evidence. As I understand the cases that run from Eddings all the way through Abdul Khavir, that, yes, that would be consistent with the Eighth Amendment. Again, not what happened here, though. Well, perhaps not, but one could read the record that way. I would disagree, because I think that the – if you look at the language of the Arizona Supreme Court, they were not saying we're giving it no weight because we just are not persuaded that it had any real relevance here. What they said was because it had no relevance, because it had no connection, we give it no weight. They were bound by their own case law that said that there was no weight. I understand that argument. But let's say, for the sake of argument, that they had used the word little weight. Because it lacks a causal connection, we give this evidence the little weight. Don't you think that would be constitutionally permissible? I believe – I believe that it would. I'm picturing my colleagues across the country sitting there cringing as I say that. But I think under the case law that that would be all right, that they could give it little weight. But they couldn't say we must give it little weight. Right. No, I take your point. That's the connection there. It's not our task here is to figure out what they were really doing and whether under our case law there's a clear indication of what approach they were taking. Yes, Your Honor. And I would like, then, to discuss briefly, in line with the Rule 28J letter that we submitted last Friday, if the Court were to agree with Mr. Poison that there was an Eddings-Lockett violation in this case or whether there was a Parker v. Duggar violation, what remedy would he be entitled to? And the only reason that we bring this up is because this is not the first time this Court has addressed this issue. And in State v. Stiers, excuse me, Stiers v. Schreero, the Ninth Circuit remanded they granted the writ. And that's where some of the confusion, I think, comes in. I would urge the Court, if it had time, to listen to the oral argument of the Arizona Supreme Court in the Stiers case after the case was sent back, after the writ issued. There was a great deal of confusion on the part of the Court as to what the effect of a grant of a conditional writ was. Mr. Stiers' attorney argued to the Arizona Supreme Court that because the writ had issued, Mr. Stiers was entitled to be resentenced pursuant to Ring v. Arizona. His conviction of judgment and sentence was no longer final. And therefore, under Supreme Court authority, he was entitled to a new sentencing. The Arizona Supreme Court felt that because the Ninth Circuit had only found an Eddings violation and had not criticized any of the aggravating factors that had been found, he was not, in fact, entitled to a resentencing. But I respectfully submit that that misses the point. And I think that Magwood, which is the case that we cited, strikes straight to the point, which is that once a court, a Federal court, issues a conditional writ of habeas corpus, the conviction and sentence are no longer final. At least in this case, the sentence, the judgment of sentence would no longer be final. And under Supreme Court authority, and these are all Federal issues, not State law issues, under Federal authority, Griffith v. Kentucky, his conviction is no longer final, and he's therefore entitled, as a matter of law, to resentencing under Ring, which, of course, became final, became case law after his first case was   I believe that there is some confusion in the State court about, and there was a dissent from Justice Hurwitz that I think is directly on point, which is that this court doesn't remand in that sense of a higher court remanding to a lower court. A Federal court issuing a writ, and there are certain steps that must be taken, and there are certain consequences that flow from the granting of the writ. I think in that, I went and looked back at what we had said in Stare's v. Shrurow, and we said either, the conditional writ said either correct the constitutional error or resentence. And so the State supreme court said, well, we'll correct the constitutional error. Was that, are you saying that it was incorrect for us to give the State court that alternative? Well, I think, no. I think what was incorrect was the way that the Arizona State supreme court interpreted that direction, which was to correct the constitutional error, the only way it could correct the constitutional error once the writ had issued was to resentence him, because for an entirely different reason, the law had evolved since Mr. Stires' first sentencing. I actually represent Mr. Stires' co-defendants, so I'm reluctant to argue too much for Mr. Stires' case, but the law had evolved. And so once the writ issued, it wasn't a question of whether they could correct it. I mean, Clemens v. Mississippi says that an appellate court can correct an error like that. But because Mr. Stires and Mr. Poisons at this Court grants the writ, sentence is no longer final, under Federal law, he would be entitled to resentencing under Ring. And with the Court's permission, if there are no questions with regard to the third claim, which is the IAC claim, which I believe, if a writ is granted and the relief that we seek is granted, becomes moot, I would reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. We'll hear from the State. May it please the Court.  Thank you, Mr. Stires and Director Ryan. I think the oral argument this morning has gone a long way to clarifying the issues that were presented in the briefs. For instance, I note that Mr. Poisons' attorney no longer concentrates on Tenard as the clearly established Federal law. He concentrates on Eddings, which is a point we made in the brief and I think is a correct one. There simply is no Arizona general rule not allowing consideration of mitigation unless there's a causal nexus. This Court explained that in its panel opinion in Sammy Lopez. It said there was no general rule. We have to assume that the Arizona courts knew what they were doing. Now, there are individual cases where it's certainly shown clearly that it wasn't applying the rule properly. Robinson is an example of that. But it said that in those cases where there's a clear indication the Court is applying some kind of causal nexus to prevent consideration, that's reversible error. Otherwise, we require a clear indication from the Court that it's doing that. And we would say that in this case, as Judge Yakuta has pointed out, in which Poison concedes is the last reason decision that this panel should look to, the focus was that there was — it gave no weight because of the lack of consideration. And we believe that that's a proper finding of Eddings. It's not saying it can't consider. It's saying we choose not to consider, which a jury would also be free to do, because most capital sentencing is done by juries and now done in Arizona. And a jury is always free to find or not find a particular mitigating circumstance. Do you have a question, Judge Totner? No. Go ahead. I was going to interject a question. You said it's focused — it's no longer on Tenard, but it's on Edding. But I thought they went together because while you can say you can consider it, Eddings at least says you can't — it's — they may not give it no weight by excluding such evidence from their consideration. And the argument that's being made is — I thought it was under the Tenard cases and Smith — which is that under the construct of Arizona — the structure of Arizona law at the time, that it was not as Judge Thomas hypothesized, that in considering and weighing you can decide to give it no weight because there's no causal connection, or you give it little weight. But rather that they didn't because they were reflecting at the time, they were reflecting the structure which impermissibly precluded them from giving it any weight. And, I mean, I — where we — how we parse the language of the reasoning is what I thought the focus was on. So are you suggesting that there's no issue now that we — before us as to whether the State Supreme Court's review was predicated and influenced and controlled by the requirement that there be causation in order for it to be considered as mitigating evidence? Well, I think there's a few parts that I need to say to answer that. First, Tenard is not clearly established law because it wasn't in existence at the time. And there's a recent decision from the United States Supreme Court, Green v. Fisher, that says you don't apply a Teague analysis. It's only fair to ask the Federal courts to apply an existing law at the time, an existing law with Eddings, and that's the law that we should apply under the Supreme Court's analysis. Indeed, Judge Akuta made that point in her dissent in Williams. And I think it just messes up the analysis by expecting the Arizona Supreme Court to have complied with an opinion that wasn't even in existence yet. And so — and it seems to me that from their argument this morning, Mr. Poisson's attorneys are agreeing that Eddings is a relevant authority to look at. Well, I think — I think Eddings is the primary authority. The question is whether Tenard was just a refinement of — or inevitable conclusion of Eddings or not. But I think — I think, personally, those nuances may not get us anywhere today. I think we know what we're discussing, which is — which is what the Arizona Supreme Court did or didn't do in its decision. Yes, that's correct, Your Honor. I just wanted to make that point on Tenard before I forgot about it. But I think it was clearly a reasonable application of Eddings because, as — as this Court said in Lopez, there — there was no general rule in the Arizona Supreme Court that wouldn't require consideration of evidence absent of causal nexus. There has to be a clear indication in the Court's opinion that it's applying a causal nexus. And I just don't think that was — that was so in this case. Well, what do — what do you make, for example, in the Arizona Supreme Court's discussion of personality disorder, of the citation to Brewer, which would require some of the — Well, I think, personally, if you look at Brewer, which I — if I can find — I think that supports our position, actually, because in Brewer, Brewer held that the evidence of a personality order would not be given an independent mitigating weight because you know, there's a lot of people who are saying that the only way to control the conduct or impaired is mental capacity. And then there's key language after that, to such a degree that leniency is required. So that's not saying that they're not giving any weight to it. They're saying that it's not such an important mitigating circumstance, such a weighty mitigating circumstance such that leniency is required. I think that's — I guess it depends on what part of the sentence you're focusing on. Well, I think you have to focus on the whole sentence, Your Honor. But to be fair to your — Well, I guess we can disagree on that, but my point on that would be where it's unclear as to what the state court was doing, if it's unclear whether it was applying a causal nexus, improper causal nexus test, then the Arizona Supreme Court should be given the benefit of the doubt. And that's what this Court said in Shadd and Lopez. And also I'd point out that besides Brewer, it cited Medina, which held that the disorder had little or no mitigating value. So I think to be fair to the Arizona Supreme Court in these cases, you have to look at the whole statement and not just parse out individual portions of it. And I think we agree this morning that it's really — the major focus is what the Arizona Supreme Court did. And I think that's only fair because it's a last-reason decision, and obviously the Arizona Supreme Court understands the law better than a particular trial court does. What do you say about the argument that — post the Supreme Court that the trial judge on the collateral review reaffirmed, clarified that he did, in fact, feel constraint? I think that's — I mean, that's not really — that's not the last-reason decision on what the Arizona Supreme Court did in resentencing. That was just something that it was — it mentioned in passing in its Rule 32 ruling, which is on — which was on different issues than on this particular Chouinard issue. What — what the — what Poisson argued on appeal was that the sentencing court had failed to find the connection. It didn't argue that there was an improper connection test being applied. It argued that — simply that the Arizona sentencing court had failed to find the connection when there was evidence that should have said that. And I think that's — That was on the drug abuse part, wasn't it? Or was it on all of them? I think basically on all the points, on any point where there wasn't the causal connection found. And then in the Rule 32 proceedings, the defendant's argument was that counsel was ineffective for not providing more evidence that would have established that connection. It wasn't their argument that — that an improper nexus rule was applied. It was that the courts had improperly considered the evidence in not — in not finding that connection. I think the Arizona Supreme Court understands the difference between a statutory mitigation under G-1 and non-statutory mitigation in general. For instance, there's a case named State v. Gallegos, 187, Arizona 1, which was my case, and which the Arizona Supreme Court, in fact, remanded because Judge Hotham in that case had considered the intoxication of the defendant. He said it's not G-1, which is substantial impairment, but the Arizona Supreme Court said, well, you need to consider it as non-statutory mitigation. So the Supreme Court understands the distinction between those two, and it understands that something that doesn't rise to a G-1 level has to be considered as a non-statutory mitigation. And I think — I think the key is consider. And if the — and you look at Eddings, Eddings, the Court said, there's a State rule that says that I can't consider this evidence. We don't have anything remotely close to that in this case. As a matter of fact, the statute, 13702G, requires that such mitigation be considered. After Lockett was passed — see, Arizona had these five mitigating circumstances that were statutory, and after Lockett was passed, the Arizona statute was concededly improper. So then the statute now requires consideration of both the statutory mitigators and any non-statutory mitigation related to the circumstances of the crime or the defendant himself. And I think one important point that may have been overlooked is it's really a matter of state court law as to whether there's a state court bar. Certainly, this Court can look at whether the Court didn't consider the mitigation, but in finding that there's a state court bar, I think you need to look back to the Arizona Supreme Court opinions. And in the remand in Stires, the Arizona Supreme Court disagreed with this Court's decision in Stires and said, we did consider it. We think the Ninth Circuit was wrong. And we don't know why it said that, because we said virtually the same thing in Sammy Lopez, and another panel in the Ninth Circuit said, you know, that was good enough. That was proper consideration. If there aren't any other questions, I just think that the record shows that the Arizona Supreme Court did its job. It had independent review of these factors. Oh, there's one other thing I wanted to consider. If the Court doesn't have any more questions on the Eddings issue, I want to go to that unreasonable finding of fact issue. And that's kind of a narrowing of what was Claim 3 in the habeas petition below, which was various. Claim 2 in the habeas petition was a claim violation of Tanar just saying there was this general nexus rule. And so any time the Arizona courts talked about that, they were violating the Constitution. Claim 3 was saying that the Arizona courts didn't evaluate the mitigation properly, a subtly separate claim. And the district court dealt with both of them together, because they were very much related. But one part of that claim was that there was an unreasonable finding of fact in holding that there were vague allegations of drug use. Well, first, I think that to say something that is vague is really not a finding of fact, it's really just to say that it's not persuasive. It's not, for instance, if the Court has said, well, he says he got his GED, but he didn't. And then the record clearly shows that he got his GED. Well, that's more of a finding of fact. To say that something's vague, that allegations are vague, is more a conclusion to saying that they're not persuasive. But what was vague about his entry into a drug treatment program? Well, he did enter into a drug treatment program based on his own statements. But what makes it vague is the overall record. And for one thing, he never had a positive drug test. He was given one drug test and wasn't positive. And another thing that makes the whole thing vague, I think, is if you look at the pre-sentence report, which is in the Supplemental Excerpt for Record, the pre-sentence report asked Mr. Poisson about his history of drug and substance abuse, and he refused to talk about it on advice of counsel. So what I'm just saying is that the record on his drug use was conflicting. I mean, some things... I can take your point if you say it's unpersuasive, but there are certain elements of the record that seem to be uncontested. Right. Well, I don't know if I said this, but vague defines... Webster just defines vague as uncertain. So if something's uncertain, it's because the evidence is conflicting on the point. And based on... For instance, one of his relatives said, well, I only thought he was drinking. Nobody testified that they saw him actually taking drugs. I just think, for the same reasons that the court found that his statements that he was on drugs when he committed the crimes wasn't persuasive, I think the court similarly found, because it kind of lumped them together, as pointed out by Poisson's counsel, kind of lumped them together, and also said, you know, for kind of the same reasons, his history of drug abuse isn't... is vague. Maybe that wasn't a good word, but it's still more of a characterization of an evidence than a finding of fact. And to be an unreasonable finding of fact, it has to be something that no reasonable fact finder would find. And based on this record of, well, maybe he was using drugs, maybe he wasn't. And this court doesn't reevaluate the factual findings of the state courts. It has to be no reasonable fact finder would find it. I think I just have one final point, and that's on Magwood. And hopefully this Court won't get to that point and find that the state courts reasonably applied the Constitution. But if it did go back, as it did go back in Stiers, and I would point out that I think that this Court has a question about what the Arizona Supreme Court did in this case. It should certify the question to the Arizona Supreme Court. Or if it finds constitutional error, it should at least send it back to the Arizona Supreme Court to fix that error, as it did in Stiers. But I think it's kind of begging the question as to whether... And I think this Court was right in sending it back, either for the Arizona Supreme Court to fix it, which it did, which was a reasonable compliance with the mandate, I think. But to say that, you know, you should have a jury trial or that, you know, if he challenged his sensing after that, it wouldn't be a second or successive petition, which is really what Magwood says. Magwood's talking about a second or successive petition. I mean, I think that's unnecessary because the courts complied with the Constitution, and I think it's a reasonable way to go to send it back to the Arizona Supreme Court to fix it, if this Court should find constitutional error. If the Court has no more questions... Just one going back to the Eddings issue and Tenard. What do you think, what do you make of what the Supreme Court did in Smith? Smith was decided, the Texas Court of Appeals decided, issued their decision before Tenard, and then in Smith, the Supreme Court said, it doesn't matter. We're applying Tenard to your case. Why doesn't that apply here? Why doesn't Tenard apply? Yes. Well, I think the error... In light of Smith. Well, and I'm not sure if Smith was in Ed's case or not, but I think that the Court has more recently clarified. I mean, it's made pretty clear in Cullen v. Penhall, Stern-Green v. Fisher, that the reasonable application analysis is pretty simple. And so I guess my response to that would be that the Arizona, or the U.S. Supreme Court has continued to clarify its rulings on what's the clearly established law, and this Court should go along with those more recent opinions rather than the older opinions. Even if the Supreme Court's statement in Smith that petitioner's evidence was relevant for mitigation purposes is plain under our precedence, even those predating Tenard, citing Penry, Payne, Boyd, Eddings? Well, I mean, it is a line of cases, but I think Green makes clear that there's an argument to be made that you can apply Teague. Now, the Teague analysis is something, a new rule or an old rule. If it's an old rule, it's just kind of a continuation and there's no bar to its retroactive application. But Green makes quite clear that you don't apply that kind of Teague analysis. You just look to the existing precedent at the time. And I think the Supreme Court's tried to make it very clear that that's the analysis. Well, that's why I asked about Smith, is it's a 2004 decision, so it's not that old. And the decision in that case by the State Court predated Tenard, but it said Tenard applies. And it seems to me the logic of what the Supreme Court was saying is, look, you look at Penry, you look at all this line of cases, Tenard's really nothing new. And so it was an articulation of an old rule. I guess I don't want to make too much of it because I think we went under either rule. But I think it's important because I think it's just important to keep legal analysis in the proper channels. And I think if Tenard doesn't mean anything different than Eddings, then why are petitioners arguing Tenard and not Eddings? Well, because it's a more clear articulation that supports their position, of course. I agree 100%. It's more favorable to them. But it's less favorable to the Arizona Supreme Court because the Arizona Supreme Court didn't have Tenard at the time it made its decision. If the Court has no more questions, I would just ask them to affirm the district court's ruling. Thank you very much. Thank you, counsel. May it please the Court. I only have four very brief points, excuse me, to make in rebuttal. First is with regard to the Arizona Supreme Court's decision in State v. Brewer. Mr. Anderson argued that Brewer, in fact, supports the State's position in this case. But I would like to read to the Court from the State's answering brief in Mr. Poisson's direct appeal where it said, in order for a, and this is at ER 801, in order for a defendant's personal or family background to be a non, to be found as a non-statutory mitigating factor, there must be a nexus or causal connection between that background and the subsequent criminal act. And it cites a series of cases, including State v. Brewer, for the proposition that personality disorder not mitigating without proof that it controlled defendant's conduct or so impaired his mental capacity as to warrant leniency. So I think that for the State to now argue that Brewer says something different than it did on Mr. Poisson's direct appeal is inaccurate. I would also want to point out again, with regard to Mr. Poisson's Rule 32, Mr. Anderson is correct that Mr. Poisson argued in Rule 32 that his counsel had been ineffective for failing to show a causal nexus. That had been, what had been most damaging to Mr. Poisson was that there had been no finding of causal nexus. And that was still the state of Arizona law at the time of his Rule 32, so that was the argument. However, at ER 591, which is his Rule 32 petition, Mr. Poisson argued, while Mr. Poisson does not wish to abandon his federal constitutional claim that his abusive background is mitigating without more, he then goes in to say that there, if I'm wrong on that, then my counsel was ineffective. And then the, we would submit, contrary to Mr. Anderson, that the Rule 32 find, the Rule 32 opinion by the trial court is the last reasoned decision on the question of causal connection, at least with regard to family background. And then finally, with the question of a certified question, it is my understanding the certified questions only apply for clarification of state law. This Court can certify a question asking the State Supreme Court to clarify a question of state law. We are not talking about state law here. We're talking purely federal law questions, and this Court is the Court to make those decisions. Any further questions? Thank you both for your arguments. Thank you. So very well and concisely presented by all of you, and we appreciate you coming today and accommodating our schedule. We'll be in recess for the morning. Thank you.
judges: Thomas, Fisher, Ikuta